IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RAMBLER AIR, LLC,<br><br>          Plaintiff,<br><br>vs.<br><br>MONOCOQUE DIVERSIFIED INTERESTS, LLC,<br><br>          Defendant. | Case No. 3:21-cv-00235-JMK<br><br>**ORDER GRANTING AMENDED MOTION TO TRANSFER** |

Before the Court at Docket 41 is Defendant Monocoque Diversified Interests, LLC's ("MDI") First Amended Motion to Transfer Venue (the "motion"). Plaintiff Rambler Air, LLC ("Rambler") responded in opposition at Docket 44, to which MDI replied at Docket 45. For the reasons below, the motion is GRANTED.

### I. BACKGROUND

MDI is an aviation management company that provides consulting, management, and technical services to the aviation industry.[1] Rambler is a subsidiary of Active Aero Group, Inc ("Active Aero").[2] It was formed to acquire assets out of the bankruptcy proceedings for Hageland Aviation Services, Inc., and Frontier Flying Service,

---

[1] Docket 24 at 4.
[2] Docket 18 ¶ 2.

Inc., including the airlines' operating certifications.[3] On March 4, 2020, MDI and Rambler entered into a Master Service Agreement ("MSA") wherein MDI would provide consulting and technical services for Rambler's airline operations in Alaska.[4] The MSA contains a "Buy Out Payment" provision that requires Rambler to pay MDI $12,000,000 for termination of the MSA, without renewal.[5] On March 15, 2021, Rambler and MDI executed three Letters of Intent ("LOIs") that MDI would procure, deliver, and lease three used aircraft to Rambler for its operations in Alaska.[6]

The Parties' business relationship soured. On September 13, 2021, MDI filed suit in Texas state court against Rambler, Active Aero, and other related entities for tortious interference with contract rights, conspiracy, fraudulent inducement, negligent misrepresentation, and quantum meruit.[7] MDI alleges that Rambler, along with the other defendants, "combined and conspired to shut down all Alaska operations, transfer or sell the assets of Rambler . . . [and] make spurious claims about MDI" in order to effectively terminate the MSA but avoid the $12,000,000 "Buy Out Payment."[8] MDI alleges that Rambler made it impossible to perform under the MSA because "there are no employees

---

[3] *Id*. ¶ 4.
[4] *See* Docket 19-5 at 6–7. Courts may take judicial notice of documents filed in federal or state courts. *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). Thus, this Court takes judicial notice of the Exhibits at Docket 19, Docket 30, and Docket 33 because they are matters of public record via the Western District of Texas and the District of Delaware.
[5] Docket 19-1 ¶ 11.
[6] Docket 1 at 4; *see also* Docket 18-3; Docket 18-4; Docket 18-5.
[7] *See generally* Docket 19-1 (original complaint); Docket 19-5 (amended complaint). MDI also brought a breach of contract claim against one defendant, USA Jet Airlines, Inc., for violating a non-disclosure agreement.
[8] Docket 19-5 ¶ 27.

or assets owned by [Rambler] for MDI to manage."[9] The lawsuit was removed to federal court and then transferred to the United States District Court for the District of Delaware (the "Delaware Lawsuit").[10]

On October 22, 2021, Rambler filed suit against MDI in this Court.[11] Rambler alleges that MDI breached the LOIs by failing to return the deposits for the three aircrafts.[12] Rambler alleges that MDI never delivered any aircrafts, thus making the deposits fully refundable under the LOIs.[13] In its Amended Answer, MDI admits that it did not deliver the aircraft, but states that "Rambler closed its business[,] refusing to take technical acceptance of the aircraft."[14]

MDI now moves to transfer this case to the District of Delaware, where it can be heard with the Delaware Lawsuit.[15] MDI asserts that Rambler's claims in this Court are compulsory counterclaims in the Delaware Lawsuit and that the case qualifies for transfer under 28 U.S.C. § 1404(a).[16] Rambler responds that the Delaware Lawsuit is unrelated and that 28 U.S.C. § 1404(a) guards against transfer.[17]

---

[9] *Id.* ¶ 28.
[10] Docket 33-1; *see also Monocoque Diversified Interests, LLC v. USA Jet Airlines, Inc., et al*, Docket No. 1:22-cv-00285 (D. Del. Mar. 3, 2022).
[11] Docket 1.
[12] *See generally* Docket 1.
[13] Docket 1 ¶ 21.
[14] Docket 47 ¶ 21.
[15] Docket 41. MDI initially moved to transfer this case to the Western District of Texas, where the Delaware Lawsuit was first removed. *See* Docket 9.
[16] Docket 41 at 2.
[17] Docket 44 at 2–4.

## II.  LEGAL STANDARD

MDI moves to transfer venue under 28 U.S.C. § 1404(a); however, it predominately argues that Rambler's claims are mandatory counterclaims in the Delaware Lawsuit.  Thus, the Court applies the "first-to-file" rule to determine if it should transfer the case based on its similarity with the Delaware Lawsuit.[18]  Because this Court finds that the claims should be transferred pursuant to the first-to-file rule, it does not reach whether transfer also would be appropriate under 28 U.S.C. § 1040(a) for the convenience of the parties.

Under the "first-to-file" rule, a district court may transfer proceedings if a "similar case with substantially similar issues and parties was previously filed in another district court."[19]  The court considers three factors:  "the chronology of the lawsuits, similarity of the parties, and similarity of the issues."[20]  In doing so, "courts should be driven to maximize economy, consistency, and comity," and the rule "should not be disregarded lightly."[21]  That said, "[t]he most basic aspect of the first-to-file rule is that it is discretionary," and the court may decline to follow it for reasons of equity.[22]

---

[18] When a prior action is pending, district courts in the Ninth Circuit apply the "first-to-file" rule instead of analyzing the claims under Federal Rule of Civil Procedure 13(a). *See, e.g., Colortyme Fin. Servs., Inc. v. Kivalina Corp.*, 940 F. Supp. 269, 272 (D. Haw. 1996); *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982).

[19] *Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015); *see also Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991).

[20] *Kohn*, 787 F. 3d at 1240.

[21] *Id.* at 1239.

[22] *Alltrade*, 946 F.2d at 628.

## III.  DISCUSSION

All three factors encourage transfer.  For the purposes of the first-to-file rule, the Court considers the timing of the filing of the state court action rather than the date of removal or subsequent transfer.[23]  As such, the Delaware Lawsuit was filed nearly six weeks before the present matter.[24]  The chronology of the suits weighs in favor of transfer.

Next, the parties are "substantially similar."[25]  Rambler and MDI are parties to both lawsuits and signatories to both contracts at issue.  Rambler argues that the Delaware Lawsuit involves multiple other defendants not named as parties in this suit.[26]  However, the first-to-file rule "does not require exact identity of the parties."[27]  "Courts have found that if the parties are not identical in the two related actions, they are 'substantially similar' under the first-to-file rule if they represent the same interests."[28]  The defendants in the Delaware Lawsuit all appear to be affiliates of Rambler, including its sole member corporation.[29]  Moreover, the Delaware Lawsuit alleges that these businesses worked in concert to interfere with the various contracts at issue, thus rendering MDI's performance impossible under the LOIs.[30]  The interests of the other defendants in the

---

[23] *Hartford Acc. & Indem. Co. v. Margolis*, 956 F.2d 1166 (9th Cir. 1992); *see also Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994) ("Courts focus on the date upon which the party filed its original, rather than its amended complaint.").
[24] *See* Docket 19-1.
[25] *Kohn*, 787 F. 3d at 1240.
[26] Docket 44 at 2.
[27] *Kohn*, 787 F. 3d at 1240.
[28] *Miller Mendel Inc., et al. v. Alaska State Troopers, et al.*, No. 3:21-cv-0129-HRH, 2021 WL 3698377, at *3 (D. Alaska Aug. 19, 2021) (quoting *Aqua Connect, Inc. v. SHI Int'l Corp.*, Case No. CV 19-05662-AB (JPR), 2019 WL 8883452, at *3 (C.D. Cal. Dec. 16, 2019)).
[29] *See* Docket 19-5 ¶ 12; Docket 18 ¶ 2; Docket 19-4 at 10–11; Docket 30-1 at 1–2.
[30] *See generally* Docket 19-5.

Delaware Lawsuit represent the same interests of Rambler in this lawsuit; accordingly, the similarity of the parties weighs in favor of transfer.[31]

Finally, the cases' issues are deeply intertwined. Like the parties, "the issues in both cases also need not be identical, only substantially similar."[32] "To determine whether two suits involve substantially similar issues, [the court] looks at whether there is 'substantial overlap' between the two suits."[33] In the Delaware Lawsuit, MDI alleges that the Defendants conspired to transfer or sell Rambler's assets such that the business shut down and all Alaska operations were terminated.[34] Accordingly, it includes a claim against Rambler for tortious interference with contract rights by "[inducing] MDI to acquire and repair three (3) aircraft and then refused to conduct any operations"[35] and a claim for quantum meruit, stating that Rambler received the benefit of the three aircraft and that "MDI justifiably relied on Defendants' representations and performed the necessary aircraft purchases and renovations."[36] In this lawsuit, MDI's affirmative defenses are: "offset," alleging that Rambler owes MDI $12,000,000 under the MSAs; "estoppel"; "fraud and fraud in the inducement"; and "waiver."[37] Specifically, MDI states that it did not deliver the aircraft because "Rambler closed its business," thus refusing technical

---

[31] *See Miller*, 2021 WL 3698377, at *3 (holding that the parties were "substantially similar," even without overlap of defendants, because parties in both cases sought the same relief); *Hoyt v. Amazon.com, Inc.*, No. 19-CV-00218-JSC, 2019 WL 1411222, at *5 (N.D. Cal. Mar. 28, 2019) (holding that parties were "substantially similar" because the asserted the same legal theory and represented the same financial interests).
[32] *Kohn*, 787 F. 3d at 1240–41.
[33] *Id*. 1241.
[34] Docket 19-5 ¶ 28.
[35] *Id*. ¶ 32; *see also id*. at ¶¶ 21–22, 28.
[36] *Id*. ¶ 46.
[37] Docket 47 ¶¶ 42–45.

acceptance of any aircraft.[38] In hearing MDI's affirmative defenses, this Court necessarily must rule on issues in the Delaware Lawsuit.[39] "These are precisely the circumstances the first-to-file rule is designed to avoid: having the same parties litigating the same issues in two different federal courts race to see which court first enters a final preclusive judgment."[40] The actions substantially overlap such that transfer is appropriate.

MDI was the first party to file, and its suit should be given priority under the first-to-file rule. This Court sees no reason, either in equity or convenience, to decline to transfer the case.[41] There is no forum selection clause in the LOIs.[42] While Rambler is an Alaskan business and the LOIs govern transactions in Alaska, its sole member is a Delaware corporation whose principle place of business is in Michigan.[43] Last, and importantly, Rambler moved to transfer MDI's claims to the District of Delaware in the

---

[38] *Id.* ¶ 21.
[39] Rambler notes that MDI's original Complaint did not include the claim for quantum meruit. Docket 17 at 8. This does not affect the Court's analysis, since the facts of the lawsuit and its central questions remain the same. *See Ward v. Follett Corp.*, 158 F.R.D. 645, 648–49 (N.D. Cal. 1994) (holding that an amended complaint did not change the first-to-file analysis because the later-filed action was sufficiently similar to the first-filed action).
[40] *Hoyt v. Amazon.com, Inc.*, No. 19-CV-00218-JSC, 2019 WL 1411222, at *6 (N.D. Cal. Mar. 28, 2019) (citing *Kohn*, 787 F. 3d at 1240). Rambler argues that the LOIs specifically disclaim any relationship with the MSAs. Docket 44 at 2. This Court does not agree. The contract simply states that the LOIs do not "amend, supersede, or modify" the terms of the MSAs; it certainly does not disclaim any association with the parties' larger agreement. *Id.* Even so, MDI's claims and affirmative defenses sound in tort rather than contract.
[41] *See Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) ("In appropriate cases it would be relevant for the court in the second-filed action to give consideration to the convenience of the parties and witnesses.").
[42] The Court notes that the MSAs include a forum selection clause that "[v]enue on all potential issues of disputes *related to* or arising out of this agreement shall be in Delaware." Docket 30-1 at 5 (emphasis added).
[43] Docket 1 at 2–3.

first-filed action.[44]  This Court concludes that transferring this action to the District of Delaware will best serve judicial efficiency and avoid duplicative lawsuits.

## IV.  CONCLUSION

For the reasons stated above, the motion at Docket 41 is GRANTED.  This action shall be transferred to the District of Delaware to be heard with the earlier-filed Delaware Lawsuit.

IT IS SO ORDERED this 24th day of August, 2022, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

---

[44] *See* Docket 33-1.